UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

PAUL B. MITCHEM, )
 )
    Plaintiff, )
 )
v. ) No. 2:08-CV-238
 )
CITY OF JOHNSON CITY, *ET AL.*, )
 )
    Defendants. )

## **MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the individual defendants' ("Boles" and "Chaffin") motion for summary judgment, [Doc. 19], and the City of Johnson City's ("City") motion for summary judgment, [Doc. 20]. In the first motion, [Doc. 19], the individual defendants move for summary judgment arguing that (1) the plaintiff's General Sessions Court "settlement" bars his state law claim of malicious prosecution; (2) the plaintiff's federal and state law claims related to his disorderly conduct charge are barred by the doctrine of judicial estoppel; (3) the officers are entitled to qualified immunity on the bicycle-riding incident, false arrest, malicious prosecution and post-arrest harassment claims; and (4) the plaintiff's state law battery

claim should also be dismissed for there is no genuine issue of material fact.[1] In the second motion, [Doc. 20], the City moves for summary judgment and contends that it is not liable under federal or state law. The plaintiff has responded to the motions, and the matter is ripe for review. For the reasons that follow, both motions are **GRANTED IN PART AND DENIED IN PART**.

**I. FACTS**

The facts are viewed in the light most favorable to the plaintiff and are taken from the plaintiff's statement of facts, which the individual defendants do not dispute. *See* [Doc. 36]. Additional facts will follow regarding other issues, namely those material to the City's motion. The plaintiff's facts are quoted below:

> 1. Mr. Mitchem, an airline[] pilot, was riding his bicycle towards his house on Elm Street on August 25, 2007, the morning of the annual tree streets yard sale. [H]e rode up beside J.C. Police Department bicycle patrol [O]fficers Boles and Chaffin and said "hello" or words to that effect.
>
> 2. Officer Chaffin told Mr. Mitchem that he needed a helmet.
>
> 3. When Mr. Mitchem asked why, Chaffin responded that it was required by Tennessee law.
>
> 4. When Mr. Mitchem responded that he had never heard of that law, Chaffin responded that it had always been a

---

[1]In the plaintiff's Response, [Doc. 29], he asserts that the post-arrest harassment and the bicycle-riding incident are not separate claims. Thus, this Court need not address those issues.

law, that maybe they were enforcing it a little more than normal that day, and that the plaintiff needed to dismount and push his bicycle "right now."

5. Mr. Mitchem complied with [O]fficer Chaffin's directive. He intended to report it later in the day and thought it would be straightened out.

6. As Mr. Mitchem pushed his bicycle to his house, he observed [O]fficers Boles and Chaffin discussing putting a parking ticket on Melissa Conner's automobile. The plaintiff had given Ms. Conner[] his permission to park in front of the driveway he shared with Holly Smith.

7. Mr. Mitchem told the officers that he lived there, that it was his driveway, and that the yard sale vendors had rented the driveway from Ms. Holly Smith. He told the officers that he had given Ms. Conner permission to park in front of the driveway.

8. Officer Boles announced that it was still illegal[,] and she was going to get a ticket.

9. Mr. Mitchem replied that there was nowhere to park, that he didn't see what the problem was, and that Ms. Conners was not bothering anyone.

10. When [D]efendant Boles stated that Ms. Conner was going to get a ticket, Mr. Mitchem stated that he had seen her down the street before he had to push his bicycle and asked permission to telephone her. Defendant Boles told Mr. Mitchem to "go ahead."

11. Plaintiff Mitchem proceeded to use his cell phone to call Ms. Conners while holding his bicycle in his right hand. He reached Ms. Conners and told her she needed to come back, that she was about to get a ticket, and that he would move his car up so she could move hers up also. Ms.

Conner responded that she was coming as quickly as she could.

12. Officer Boles asked Mr. Mitchem how long "this" was "going to take." The plaintiff responded that he didn't know. Mr. Mitchem then asked Ms. Conner how long it was going to take and told her they were in a "big hurry." He then told Ms. Conner that he was taking his bicycle in and would meet her.

13. Officer Boles asked Mr. Mitchem if he had any identification on him. The plaintiff said "no." Boles immediately slapped a handcuff on the plaintiff's right wrist.

14. Mr. Mitchem was still on the cell phone when [O]fficer Boles began to handcuff him. He told Ms. Conner to hurry up and that he was being arrested.

15. Officer Chaffin took the plaintiff's bicycle, moved it, and put the kick stand down.

16. Officer Boles tightly handcuffed both of plaintiff's hands behind his back and told the plaintiff he was under arrest and going to jail.

17. When the plaintiff asked what he had done, Boles responded that he had been "arguing." Mr. Mitchem responded that [O]fficer Boles had given him permission to call Ms. Conner to get her car moved.

18. Boles responded that the plaintiff was arguing and was "condescending."

19. At Mr. Mitchem's request, Ms. Conner, who had just arrived at the scene, took the plaintiff's house key from his pocket and put his bicycle inside his house.

20. Officer Boles did loosen the plaintiff's handcuffs when Mr. Mitchem told him they were too tight and asked if he could loosen them.

21. Ms. Conner called her Johnson City attorney, who talked briefly with [O]fficer Boles via cell phone. Officer Boles then took the handcuffs off the plaintiff.

22. Officer Boles advised Mr. Mitchem that he would be allowed to drive himself down to the police station for processing the next day.

23. Mr. Mitchem asked what he had done. Officer Chaffin turned from talking with Ms. Conner and told the plaintiff he had "a tone" and was condescending and was unhappy when told to push his bicycle.

24. The plaintiff responded that he had pushed his bicycle as directed. Chaffin replied: "Yes. But you weren't happy."

25. Officer Boles became visibly irritated that the plaintiff was talking with [O]fficer Chaffin and told the plaintiff that if he discussed it anymore he would be arrested for interfering with a police officer in the line of duty.

26. When Mr. [Mitchem] said he was just trying to find out what he had done, [O]fficer Boles got in his face and said "one word, one word, one word, your going to jail; one word, one word." The plaintiff remained quiet.

27. When the plaintiff began reading the citation which was being issued to him electronically, [O]fficer Boles told him to either sign it or he would go to jail.

28. Mr. Mitchem remained calm throughout the arrest episode.

29. Officer Boles appeared "very agitated" after he arrested

the plaintiff.

30. Officer Chaffin testified during his deposition that he told the plaintiff to stop talking on the telephone. Chaffin then reached up and took the cell phone from the plaintiff's hand, clicked it shut, and put it in Mr. Mitchem's pocket as [O]fficer Boles handcuffed him.[2]

31. The "Final Disposition" of the City's internal affairs investigation [Doc. 25-1, p. 23] concluded that the "deal" between the anonymous assistant district attorney who discussed the dismissal of the disorderly conduct charges with the plaintiff's attorney " . . . had nothing to do with the merits of the case."

32. Johnson City Police Chief John Lowry's June 12, 2008 letter to Mr. Mitchem announced that the plaintiff's allegations of "civil rights violation" [were] "Unfounded."

33. Chief John Lowry's June 12, 2008 letter to Mr. Mitchem announced that the "agreement" between the District Attorney's staff and the plaintiff's attorney Don Spurrell regarding the dismissal of the disorderly conduct charges against the plaintiff "had nothing to do with the merits of the case."

34. Internal [A]ffairs [O]fficer Captain Steve Smith testified in his deposition at page 44-46 [SJP Ex. #3] that his conclusion in the internal affairs investigative report that [O]fficer[s] Boles and Chaffin had probable cause to arrest the plaintiff for disorderly conduct was not based upon what the officers, the plaintiff, and witness Conner told him had happened but was based on the General Sessions Court's dismissing the charges against the

---

[2]The officers admit that this is the testimony; however, they note it is not the testimony of the plaintiff. The plaintiffs testimony is that it was Officer Boles who took the cellular telephone from him and placed it in his pocket.

plaintiff.[3]

35. Capt. Smith testified at page 45 of his deposition, SJP Ex. #3, that the assistant D.A., first name of Robin, who had handled the plaintiff's disorderly conduct charges in the General Sessions Court told Capt. Smith that she could not remember the details of the "deal."

36. Capt. Smith had no personal knowledge of the proceedings which occurred before the General Sessions Court with regard to the plaintiff's disorderly conduct charges.

In addition, the records of the Johnson City Police Department show that Officers Boles and Chaffin were certified by Tennessee's Police Officers Standards and Training ("POST") Commission and had all required training on the date of incident. Neither officer had anything in his personnel file that would have indicated the need for remedial training in any area prior to the incident.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in

---

[3]As a result of the internal affairs investigation, Officer Boles was required to undergo remedial training on Tennessee's bicycle helmet law.

the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52;

*Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

## III. ANALYSIS

As stated, in the first motion, [Doc. 19], the individual defendants move for summary judgment on all claims. In the second motion, [Doc. 20], the City moves for summary judgment as to all claims. The Court will discuss each motion in turn.

**A. Whether plaintiff's General Sessions Court "settlement" bars his state law malicious prosecution claim?**

The defendants argue that the state law claim of malicious prosecution is barred by plaintiff's General Sessions Court "settlement." They also assert that the Complaint is unclear as to whether the plaintiff is also asserting a federal civil rights claim of malicious prosecution. They argue that the same argument applies to both.

The defendants are correct in that it is unclear from the Complaint and from the plaintiff's Response whether the plaintiff is asserting a federal civil rights claim of malicious prosecution. The plaintiff states in his response that "[e]ven under the most liberal interpretation of the *Kroger* decision, Mr. Mitchem's state law malicious prosecution claim for relief would be the only claim adversely impacted." He then goes on to state that Fourth Amendment section 1983 claims are different from state tort law claims in the context of collateral estoppel and res judicata. Thus, even though it is unclear as to whether the plaintiff has asserted a section 1983 malicious prosecution claim, this Court will assume that he did, for the purposes of this motion, considering the defendants contend that the same argument applies to both.[4]

In Tennessee, "to establish the essential elements of an action for malicious prosecution, the plaintiff must show that (1) a prior suit or judicial proceeding was brought against plaintiff without probable cause, (2) defendant brought such prior action with malice, and (3) the prior action was finally terminated

---

[4]Notwithstanding this Court's assumption, this Court notes that the Complaint only mentions malicious prosecution in the state law context. Federal Rule of Civil Procedure 8(a)(2) requires the complaint to contain a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In addition, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and to "state a claim to relief that is plausible on its face," *id*. at 570; *see also Ashcroft v. Iqbal*, – U.S. –, 129 S.Ct. 1937, 1949-50 (2009).

in favor of plaintiff." *Christian v. Lapidus,* 833 S.W.2d 71, 73 (Tenn. 1992).[5] The defendants' only argument in this regard is that based upon *Landers v. Kroger Company*, 539 S.W.2d 130 (Tenn. Ct. App. 1976), that the current action was not terminated in the plaintiff's favor.

In *Landers*, a 17 year old college student wrote a check to Kroger and it was returned for insufficient funds. *Id.* at 131. A prosecution ensued in the juvenile court. *Id.* A counselor in juvenile court interviewed Landers and spoke with someone at Kroger. *Id.* Kroger agreed to dismiss the prosecution if Landers paid the check. *Id.* Thus, the matter was handled "on an informal basis." *Id.* Landers then sued Kroger for malicious prosecution. *Id.*

First, the Tennessee Court of Appeals found that Landers failed to carry her burden that there was an absence of probable cause. *Id.* at 132. The check was returned to Kroger for insufficient funds, Kroger complied with all statutory requirements. *Id.* In the end, Landers agreed to pay Kroger the money to cover the check. *Id.* Second, the court offered an "additional reason" why Landers was not entitled to recovery. *Id.* at 133. The court stated that the proceeding did not terminate in her favor. *Id.* The proof showed that the case was compromised and

---

[5]For a discussion regarding a section 1983 malicious prosecution action and elements, see *Robinson v. City of Memphis*, 340 F.Supp.2d 864 (W.D. Tenn. 2004).

settled, and "the compromise did not come from Kroger but came from the juvenile court authorities." *Id*. The court determined that based on these facts, the termination was not in favor of Landers. *Id*.

The record in this case indicates from plaintiff's own admission that plaintiff's attorney in General Sessions Court spoke with an assistant district attorney. After their discussion, the state dismissed its case upon the plaintiff's payment of court costs. Plaintiff admits that he paid such costs.

In *Bowman v. Breeden*, 1988 WL 136640, at *2 (Tenn. Ct. App. Dec. 20, 1988), the court faced a similar scenario. It stated:

> . . . While various modes of termination can be construed as favorable to an accused, a cause dismissed pursuant to a compromise and/or settlement is an indecisive termination and, thus, cannot sustain an action for malicious prosecution. *See, Landers, supra; Martin v. Wahl,* 17 Tenn. App. 192, 66 S.W.2d 608 (1933); 52 Am.Jur.2d *Malicious Prosecution,* § 43; Restatement of Torts 2d, § 660.

> [T]he reason for the rule is said to be, either that there is in such cases such an admission of probable cause that the Plaintiff cannot afterwards retract it and try the question which he waived by the settlement, regardless of the validity or invalidity of the compromise, or that the accused, having consented to a termination which leaves open the question of his guilt and possible conviction cannot take advantage of it. *See,* 52 Am.Jur.2d, *supra* . *See, Martin, supra.*

12

> Despite Plaintiff's vehement denial to the contrary, the transcript of the criminal proceedings shows the dismissal of the charges against him were obtained pursuant to a compromise and settlement. The parties (i.e., the Plaintiff and the State) came to a "resolution" whereby the first count was dismissed without terms for being duplicative of, and thus replaced by, the second count. The second count was dismissed contingent upon Plaintiff's agreement to pay court costs. The fact that Plaintiff was relieved of payment of cost due to indigence is irrelevant to whether an agreement was reached and whether such was the reason for dismissal. There is absolutely no indication the charges were dismissed either because they were unfounded or because victory for the prosecution was otherwise dubious.

*Id*. The court went on to conclude that the plaintiff's action for malicious prosecution could not lie because of the compromise and settlement. *Id*. at *3.

As in *Bowman*, the case here was a result of a compromise and settlement. It is true that the General Sessions Court did not reach the merits of the action as the plaintiff claims, but that is not dispositive. Based on the above, the defendants' motion for summary judgment in this regard is **GRANTED**.

**B. Whether the federal and state law claims relating to the disorderly conduct charge are barred by the doctrine of judicial estoppel?**

The defendants next argue that the plaintiff should be judicially estopped

13

from asserting his federal and state law claims of false arrest, malicious prosecution, and battery. The Sixth Circuit summarized this Circuit's law on judicial estoppel in *Longaberger Company v. Kolt*, 586 F.3d 459, 470 (6th Cir. 2009). The court stated:

> "Judicial estoppel is an equitable doctrine that preserves the integrity of the courts by preventing a party from abusing the judicial process through cynical gamesmanship, achieving success on one position, then arguing the opposite to suit an exigency of the moment." *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1217-18 (6th Cir. 1990); *see also New Hampshire v. Maine*, 532 U.S. 742, 750, 121 S.Ct. 1808, 149 L.Ed.2d 968 (2001). "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne*, 911 F.2d at 1218). The doctrine of judicial estoppel, however, "is applied with caution to avoid impinging on the truth-seeking function of the court because the doctrine precludes a contradictory position without examining the truth of either statement." *Teledyne*, 911 F.2d at 1218 (footnote omitted). Moreover, a court should consider whether a party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement. *New Hampshire*, 532 U.S. at 751, 121 S.Ct. 1808.

*Id*.

Using these factors, it is clear from the record that neither factor is met. The plaintiff did not assert a position under oath in a prior proceeding. In actuality, he asserted a consistent position to what he is asserting now. He has consistently

maintained that he was not disorderly. Granted, he did pay court costs, but that decision was not an admission of guilty. At worst, it left the matter of guilt ambiguous. Next, the General Sessions Court did not adopt his position in its final disposition. The court did not hear the merits at all, for the state dismissed the case. Thus, that court made no determination. In short, there is no risk that courts could reach inconsistent determinations. The defendants' motion in this regard is **DENIED**.

**C. Whether Officer Chaffin is entitled to qualified immunity on the false arrest and malicious prosecution claims?**

Officer Chaffin moves for summary judgment as to the false arrest and malicious prosecution claims. He argues that he is entitled to qualified immunity because he was not the arresting officer.

> In determining an officer's entitlement to qualified immunity [this Court] follow[s] a two-step inquiry.[6] *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First taken in the light most favorable to the plaintiff, [the Court] decide[s] whether the facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, [the Court] next ask[s] whether the right was clearly established. *Id.*

---

[6]The Supreme Court recently held that the *Saucier* approach is no longer mandatory, and the district courts can elect to decide the second issue without determining whether a constitutional violation actually occurred. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). This Court will use the two-step approach of *Saucier*.

15

*Vakilian v. Shaw*, 335 F. 3d 509, 516-17 (6th Cir. 2003). In general, government officials performing discretionary functions are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The relevant question for the Court regarding whether the right was clearly established is not the subjective intent of the defendant, but whether a reasonable officer would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640.

It is true from the record that the plaintiff asserts that Officer Boles is the defendant who took his cellular phone and placed it in his pocket during the arrest. To the contrary, Officer Chaffin admitted in his own deposition that he was the officer who did these things. However, Officer Chaffin argues in his reply, that even if the Court accepts his testimony as opposed to the plaintiff's version (the summary judgment standard), then he is still entitled to summary judgment because he did not make the decision to arrest or prosecute the defendant. He cites no case law in support.

The lack of authority cited does not necessarily trouble this Court

because it is a decision based upon common sense. Even taking Officer Chaffin's version as the truth, he cannot be guilty of violating the plaintiff's constitutional rights if he was not the actor. The action is the decision to arrest and prosecute the plaintiff. The plaintiff did not sue for excessive force during the arrest, which would implicate the mechanics of the arrest. Officer Chaffin merely assisted another officer in the line of duty to effectuate the arrest. Thus, he assisted with the mechanics, not the substance. As such, Officer Chaffin's motion is **GRANTED** in this regard.

**D. Whether the City is liable?**

In the Complaint, it seemed that the plaintiff asserted liability on behalf of the City for failure to train and actions taken by officials with final decision-making authority. However, in the plaintiff's Response, [Doc. 31], the plaintiff stated that he was not pursuing a failure to train theory. Thus, this Court will only discuss whether the City was the moving force behind the alleged constitutional violation for being deliberately indifferent to plaintiff's rights through a custom or policy via actions taken by officials with final decision-making authority.

To establish liability under § 1983, a plaintiff must demonstrate that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) he was subjected or caused to be subjected to this deprivation by a person acting under color of state law. *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir.

17

1994) (citing *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1979)). Suits against defendants in their official capacities as city employees are essentially suits against the city. *See Fox v. Van Oosterum*, 176 F.3d 342, 347-48 (6th Cir. 1999) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991); *Monell v. Dep't of Social Services*, 436 U.S. 658, 690 n. 55 (1978)); *see also Scott*, 205 F.3d at 879 n. 21. It is firmly established that a municipality cannot be held liable under § 1983 for an injury inflicted solely by its employees or agents. *Monell*, 436 U.S. at 694. To prevail, the plaintiff must show that the alleged federal rights violation occurred because of a municipal policy or custom. *Id.*

In so doing, the plaintiff "must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Cherrington v. Skeeter*, 344 F.3d 631, 645 (6th Cir. 2003).

A plaintiff may look to four different avenues to prove the existence of a municipality's illegal policy or custom: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of in adequate training or supervision; or (4) a custom of

tolerance or acquiescence of federal rights violations. *Monell*, 436 U.S. at 694. Here, as stated above, the focus is upon the second factor.

More specifically, the plaintiff argues that Police Chief John Lowry, who is not a party to this lawsuit, "ratified" the alleged unconstitutional conduct when he approved of Internal Affairs Captain Steve Smith's conclusions contained in his internal investigation report. In other words, the plaintiff asserts that Chief Lowry was the final policymaker for the City. As such, he was thus required to properly decide whether there was probable cause for the plaintiff's arrest for disorderly conduct. Chief Lowry's alleged failure to find the arrest improper, according to the plaintiff, subjects the City to section 1983 liability.

First, the City's Charter provides in section 45.3 that the chief of police is not the final policymaker, but it is the city manager. *See* www.johnsoncitytn.org. Thus, he is not the final policymaker. "[A]n official is a 'policymaker' only when state or local law vests in him the 'authority to establish municipal policy with respect to the action ordered,' and such authority is 'final.'" *Jorg v. City of Cincinnati*, 145 Fed. Appx. 143, 146 (6th Cir. 2005).

Even if Chief Lowry would be considered the final policymaker for this particular action, the plaintiff's claim still fails. Lowry's actions occurred after the plaintiff sent him a letter alleging that he had been subjected to an unconstitutional

arrest. As such, it cannot be that Lowry's alleged policymaking decision was the moving force behind the constitutional deprivation subjecting the City to liability. *See Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991). Lowry's actions did not cause the alleged violation.

In addition, Lowry was not deliberately indifferent because when he found out about the plaintiff's allegations; he ordered an internal investigation. He affirmatively acted with deference to the situation presented to him and diligently pursued the matter in terms of his office's protocol. This Court cannot conclude that he was deliberately indifferent to an allegedly previously-committed constitutional violation of which he did not condone.

For all of the reasons set forth above, the City's motion for summary judgment is **GRANTED**.

## IV. CONCLUSION

In sum, for the reasons stated above, the individual officers' motion, [Doc. 19], is **GRANTED IN PART AND DENIED IN PART**. The City's motion, [Doc. 20], is **GRANTED**.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE